# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER PROSSER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:09CV2117 HEA** |
| | ) | |
| **GOVINARAJULU NAGALDINNE,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION, MEMORANDUM AND ORDER

Plaintiff Christopher Prosser, an inmate of the Missouri Department of Corrections ("MDOC") living at Northeast Correctional Center ("NECC") in Bowling Green, Missouri, alleges that defendants failed to provide him with appropriate medical care resulting in serious and permanent injuries. Doc. #74. His sixteen-count first amended complaint seeks relief from ten defendants. These defendants include: Correctional Medical Services ("CMS"); Valitas Health Services, Inc. ("Valitas Health"); Dr. Govinarajulu Nagaldinne ("Dr. Nagaldinne"); Dr. Laurain Hendricks ("Dr. Hendricks"); Dr. Beverly Morrison ("Dr. Morrison"); Lois Cella ("Cella"); Dr. Elizabeth Conley ("Dr. Conley"); and Dr. Michael Sands ("Dr. Sands"), with each individual defendant being an employee of defendant CMS who was involved with plaintiff's medical care at various times. Plaintiff alleges, against these defendants, constitutional claims of deliberate indifference to a serious medical need and tort claims of medical malpractice . Plaintiff has also named George Lombardi, Director of MDOC, and Melody Griffin, Medical Contract Monitor for MDOC as defendants. Plaintiff seeks to impose supervisory liability pursuant to 42 U.S.C. § 1983

against this set of defendants for tacit authorization of the other defendants' allegedly constitutionally defective medical care. Defendants Lombardi and Griffin's have filed their motion to dismiss, or alternatively, for summary judgment [Doc. #85] and plaintiff's motion to strike new evidence and argument in defendants' reply memorandum, or alternatively, to file a surreply [Doc. #113]. These matters have been fully briefed.

### Plaintiff's Motion to Strike, or alternatively, to File surreply

Plaintiff alternatively seeks to file a surreply in order to respond to defendants' new evidence and argument. Plaintiff submitted his proposed surreply with the motion. Plaintiff's motion to strike is denied. His alternative request for relief, allowing him to file his surreply to respond to defendants' arguments is granted.

### Standard applicable to Defendants' Motion to Dismiss, or alternatively, for Summary Judgment

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard Rule 8 announces does not require "detailed factual allegations," Bell Atl. Corp. V. Twombly, 550 U.S. 544, 555 (2007), but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, _ U.S. _, 129 S. Ct. 1937, 1949 (2009). A pleading that offers legal conclusions, a formulaic recitation of elements, or naked assertions devoid of factual enhancement does not suffice. Id.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A claim has facial plausibility when the alleged facts allow a court "to

draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Only well-pleaded facts are accepted as true, while "[t]hreadbare recitals of the elements of a cause of action" and legal conclusions are not. Id. "[L]egal conclusions can provide the framework of a complaint, [but] they must be supported by factual allegations." Id. at 1950. When a complaint contains well-pleaded factual allegations, a court should assume the well-pleaded facts are true and then determine whether they plausibly entitle the plaintiff to relief. Id. If the well-pleaded facts do not plausibly entitle the plaintiff to relief, the claim should be dismissed. Id.

The standard applicable in determining whether summary judgment should issue, burdens the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). The Court views the facts and inferences from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). At the summary judgment stage, the Court will not weigh the evidence and decide the truth of the matter, but rather, will determine if there is a genuine issue for trial. Anderson, 477 U.S. at 249.

**I. First Amended Complaint**

At all times relevant to this lawsuit, MDOC retained defendant CMS to provide medical services to inmates of the MDOC penitentiary system.[1]  Defendant Valitas Health is the parent corporation of defendant CMS.  Defendants Dr. Nagaldinne, Dr. Hendricks, Dr. Morrison, Cella, Dr. Conley, and Dr. Sands were employees of defendant CMS who treated plaintiff at various times.

In August 2006, plaintiff was incarcerated at MDOC's Farmington Correctional Center ("FCC") in Farmington, Missouri.  Early that month, he sustained a back and spine injury while jogging on the asphalt track.  The injury caused severe pain, which radiated from his lower back through his buttocks, hip, right leg, calf, ankle, and toes.  The injury also caused numbness and decreased function in his right foot, resulting in a condition known as "foot drop."  Foot drop is a symptom of an underlying neurological, muscular, or anatomical problem, and failure to properly and timely diagnose and treat the underlying problem can cause permanent disability.

Plaintiff reported to defendant CMS at FCC promptly after being injured and informed the staff of the nature of his injury as well as the resulting foot drop and other neurological issues.  His complaints were documented in a medical services request form ("MSR").  He was examined by a nurse.  His demand to see a doctor immediately was refused, and the nurse scheduled a later appointment with a doctor from defendant CMS.

About a week after first reporting his injury, plaintiff was evaluated by defendant Dr. Nagaldinne.  Plaintiff alleges that defendant Dr. Nagaldinne's evaluation and treatment were not appropriate.  Plaintiff alleges that defendant Dr. Nagaldinne indicated that he did not have time to conduct all of the appropriate tests and that such tests would not be approved by defendant CMS

---

[1]The facts set out are those well-pleaded facts in plaintiff's first amended complaint that are assumed to be true for purposes of defendants' motion to dismiss.

because of the expense. Plaintiff alleges that defendant Dr. Nagaldinne told him that plaintiff would have to address his medical problems upon his release from prison. Plaintiff alleges that defendant Dr. Nagaldinne repeated these statements at later appointments. Plaintiff further alleges that defendant Dr. Nagaldinne's inappropriate care left him in severe pain for an extended period of time and resulted in a delay in proper diagnosis, which caused chronic foot drop and other neurological issues.

In January 2007, plaintiff was evaluated by a private, off-site physician, Dr. Helen Rice. He expressed substantially the same symptoms as those in his prior meetings with defendant CMS's staff. Dr. Rice diagnosed plaintiff with foot drop. Following plaintiff's consultation with Dr. Rice, defendant CMS's staff failed to note her diagnosis in plaintiff's medical record.

Plaintiff continued to experience pain in his right lower extremity. In early February 2007, plaintiff reported to defendant CMS at FCC and was seen by defendant Dr. Hendricks. Plaintiff told defendant Dr. Hendricks about his medical history and symptoms. Plaintiff alleges that defendant Dr. Hendricks failed to take appropriate actions. Plaintiff alleges that defendant Dr. Hendricks indicated that surgery to correct plaintiff's medical issues was too expensive and would not be approved by defendant CMS. Defendant Dr. Hendricks requested that plaintiff be issued a cane.

On March 5, 2007, plaintiff returned to defendant CMS and was evaluated by its physician, Dr. Cleveland Rayford (who is not a defendant in this lawsuit). Dr. Rayford noted that plaintiff suffered from right foot drop and that an MRI and evaluation by an orthopedic specialist were necessary. The MRI was requested ten days later, but only after plaintiff paid additional visits to defendant CMS requesting the prescribed treatment.

On March 23, 2007, plaintiff underwent an MRI on his lower spine. The MRI indicated serious spinal injury, including a herniated disc in his lower back. Plaintiff was referred to an orthopedic specialist for further evaluation.

On April 6, 2007, plaintiff visited Dr. John Spears, an off-site orthopedic specialist at the Missouri Spine Institute. Dr. Spears noted that plaintiff suffered from decreased function in his right foot, severe atrophy of his right calf muscle, and constant pain. Dr. Spears concluded that plaintiff suffered L5-S1 motor palsy of the lower right extremity caused by foramina stenosis and herniated nucleus pulposus at the L5-S1 vertebral level. Dr. Spears prescribed microscopic back surgery for decompression and stabilization of plaintiff's neurological problems. Dr. Spears noted that the delay in treatment would likely have an adverse affect on plaintiff's ability to recover full use of his right foot and leg. Dr. Spears also prescribed Ultram, a pain drug approved for use by defendant CMS, for plaintiff to take both before and after surgery. Defendant CMS's employees refused to administer the prescribed pain medication for extended periods of time after plaintiff's consultation with Dr. Spears, despite plaintiff's continued visits to defendant CMS and complaints of severe pain.

On May 10, 2007, Dr. Spears performed surgery on plaintiff's spine. The following day, plaintiff was transported back to FCC and admitted to defendant CMS's infirmary, where he stayed for about two weeks. On May 25, 2007, plaintiff visited Dr. Spears for an initial post-operative evaluation. Dr. Spears noted that Ultram should be continued for pain management and that prednisone treatment should be avoided for proper healing. He also prescribed an ankle-foot orthosis and physical therapy.

Following plaintiff's post-operative visit with Dr. Spears, plaintiff was not provided with Ultram, despite repeated complaints, leaving him in extreme pain. Defendant CMS authorized a

single physical therapy session, which took place on June 6, 2007. The physical therapist prescribed a four-week program, which plaintiff's treating CMS physician requested. Defendant Dr. Conley, Regional Medical Director of CMS, denied the request for the physical therapy program, without personally evaluating plaintiff.

Throughout June and July 2007, plaintiff filed multiple MSRs and made multiple urgent requests for Ultram. The medication was provided for limited periods. Defendant CMS's personnel also attempted to give plaintiff prednisone, contrary to Dr. Spears' recommendation.

Under orders from defendant Dr. Conley, defendant CMS's personnel refused to provide the prescribed pain medication unless plaintiff was confined to defendant CMS's infirmary. Plaintiff alleges that this order served no legitimate penological purpose and varied from practices used with other MDOC inmates under defendant CMS's care. Plaintiff further alleges that confining him to the infirmary would have severely limited his ability to exercise his foot and leg, contradicting plaintiff's treatment orders from Dr. Spears. Plaintiff alleges that defendant Dr. Conley forced him to choose between suffering in extreme pain without Ultram in his normal living unit or receiving pain relief but being unable to exercise in the infirmary.

On July 9, 2007, plaintiff visited Dr. Spears for a follow-up examination. Dr. Spears noted that plaintiff's continued need for Ultram was reasonable and that defendant CMS's dispersal of prednisone was improper due to risks of spinal nonunion. He reiterated that plaintiff needed to exercise his right leg and foot. Dr. Spears contacted defendant Dr. Conley to discuss the care provided by defendant CMS.

Upon plaintiff's return to FCC from his visit with Dr. Spears, his pain medication was confiscated immediately. Plaintiff was informed that, under defendant Dr. Conley's orders, he would

be denied pain treatment unless he was confined to defendant CMS's infirmary. Plaintiff alleges that defendant CMS and its staff were aware that placement in the infirmary directly contradicted Dr. Spears' orders. Plaintiff refused placement in the infirmary and continued to suffer pain without medication.

On or about July 23, 2007, plaintiff filed an emergency Informal Resolution Request ("IRR") with FCC's warden, seeking emergency treatment for his back pain. A draft lawsuit setting forth claims against defendant CMS, CMS personnel, and MDOC personnel regarding plaintiff's medical treatment was attached to the IRR.

On August 13, 2007, plaintiff was again evaluated by Dr. Spears. He concluded that the delay in the diagnosis of plaintiff's condition resulted in permanent damage to his right leg and foot. Dr. Spears again prescribed Ultram to treat plaintiff's pain. After this visit, plaintiff was allowed to take pain medication without confinement to the infirmary.

In late August 2007, plaintiff underwent a nerve conduction study with Dr. Mace, an off-site physician. Dr. Mace prescribed physical therapy and electronic stimulation. He noted that the delay between plaintiff's injury and surgery and delays in plaintiff's post-surgery treatment likely caused permanent injury. Dr. Mace advised that the ankle-foot orthosis and shoes provided to plaintiff were inadequate and could aggravate his condition. Dr. Mace prescribed orthopedic shoes and a more advanced ankle-foot orthosis. Finally, Dr. Mace advised that plaintiff be referred to a peripheral nerve specialist, Dr. Mackinnon.

Defendant Dr. Conley denied authorization for evaluation and treatment by Dr. Mackinnon. She also denied the request for an advanced ankle-foot orthosis. Defendant Cella, defendant CMS's nurse supervisor at FCC, cancelled the orthopedic shoes ordered after Dr. Mace's evaluation and

instructed Mid Missouri Orthotics and Prosthetics to modify the shoes previously provided to plaintiff. Plaintiff alleges that, as a result of defendants Dr. Conley and Cella's action, he was provided with inadequate foot support, contrary to the prescription of his surgeon.

During late October and November 2007, plaintiff continued to report to defendant CMS complaining of severe pain and requesting medical assistance. Defendant CMS's staff refused to provide treatment or referral to a physician.

On November 20, 2007, plaintiff sent a demand letter to defendants CMS, Dr. Conley, and Dr. Sands, enclosing a draft civil action. Shortly after plaintiff delivered his demand letter, defendant Cella undertook a series of retaliatory actions against plaintiff, including seeking justification to revoke his long-handled toothbrush and falsifying plaintiff's medical records to interfere with prescribed pain medication.

In December 2007, plaintiff sought treatment from defendant Dr. Morrison to determine the source of his continued severe pain. Plaintiff alleges that defendant Dr. Morrison provided insufficient care and insisted that she was limiting her treatment to review of his pain medication. Plaintiff alleges that defendant Dr. Morrison's actions resulted in a delay in the proper diagnosis and treatment of an additional herniated disc.

On or about January 9, 2008, plaintiff filed a civil claim in this Court against defendant CMS, various CMS employees, and various MDOC employees. Plaintiff was transferred to MDOC's NECC shortly thereafter. Plaintiff alleges that defendant Cella contacted defendant CMS's staff at the medical department at NECC with the intent of interfering with his care at that facility. When plaintiff reported to defendant CMS's department at NECC during the first month after his transfer,

he requested treatment for severe pain and that he be referred to a pain management specialist. No treatment or referral was given.

On or about February 13, 2008, Dr. Rice requested an MRI to determine the source of plaintiff's continued back pain. A CMS treating physician requested approval for the MRI, but the request was denied by defendants Drs. Conley and Sands.

On February 22, 2008, plaintiff wrote to Larry Crawford, the Director of MDOC at that time. The letter described plaintiff's medical needs and the inadequate treatment provided by defendant CMS. Plaintiff pleaded for MDOC to intervene. Plaintiff received a response from defendant Griffin three weeks later. Defendant Griffin's response indicated that she referred the matter to defendant Dr. Sands for further review and response. Plaintiff alleges that it was improper for defendant Griffin to refer the complaint to defendant Dr. Sands because he was an employee of defendant CMS and had participated in the decisions that were the subject of plaintiff's complaints.

Plaintiff alleges that defendant CMS and its employees were deliberately indifferent to his serious medical needs in violation of his rights under the Eighth Amendment to the United States Constitution. Plaintiff further alleges that defendant Griffin's failure to take any action other than referring the matter to defendant Dr. Sands amounted to an abdication of her oversight responsibilities and tacit authorization of defendant CMS's deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment.

Defendant Dr. Sands contacted Dr. Mackinnon in regard to potentially evaluating and treating plaintiff. Plaintiff alleges that defendant Dr. Sands sent Dr. Mackinnon an incomplete and inaccurate account of plaintiff's medical issues. Dr. Mackinnon responded that she could evaluate plaintiff for dorsal column stimulation for treatment of his pain. Plaintiff alleges that, contrary to Dr.

Mackinnon's statements, defendant Dr. Sands informed plaintiff that Dr. Mackinnon had nothing to offer for him and denied further evaluation or treatment.

In late April 2008, Dr. Rice issued a second request for an MRI and for plaintiff's broken leg brace to be repaired. Defendants Drs. Conley and Sands denied these requests. Defendant CMS's treating physicians refused to enter subsequent MRI requests because such requests would be denied by defendants Drs. Conley and Sands.

Plaintiff alleges that defendant CMS's staff made grossly inadequate attempts at repairing his ankle-foot orthosis. Plaintiff further alleges that defendant CMS provided inadequate substitutes for the broken ankle-foot orthosis.

In July 2008, defendant CMS approved an MRI to evaluate the source of plaintiff's continued pain. The MRI was performed in August 2008, and plaintiff was sent to Dr. Spears for evaluation in October 2008. Dr. Spears diagnosed plaintiff with a disc herniation at the L4-L5 level, causing significant compression on a spinal nerve. This condition required a microdiscectomy, which Dr. Spears performed on October 29, 2008. Plaintiff alleges that defendant CMS's personnel continued to provide him with inadequate pain treatment, auxiliary aids, and physical therapy following his second spinal surgery. He alleges that this left him in extreme pain and limited his ability to recover.

Plaintiff alleges that various MDOC and CMS personnel contacted the Missouri Board of Probation and Parole in February 2009. He alleges that they interfered with his parole application as retaliation for plaintiff's filing of grievances and litigation regarding his medical treatment.

In December 2008, defendant Lombardi became the Director of MDOC. Beginning in March 2009, plaintiff sent multiple letters to defendant Lombardi, alleging that defendant CMS's personnel retaliated against him for filing lawsuits and grievances regarding his medical care. Plaintiff wrote

about his serious medical issues and the lack of meaningful evaluation and treatment by defendant CMS's staff. Plaintiff pleaded with defendant Lombardi to investigate and remedy the retaliatory actions and lack of attention to his suffering.

Plaintiff alleges that, as the Director of MDOC, defendant Lombardi is ultimately responsible for the care and treatment of its inmates. Plaintiff alleges that defendant Lombardi abdicated his responsibilities by failing to investigate plaintiff's allegations. Plaintiff further alleges that this constituted tacit authorization of the violation of plaintiff's First and Eighth Amendment rights by defendant CMS and its employees.

Plaintiff filed the instant action on December 23, 2009. Plaintiff alleges in his amended complaint that subsequent to the filing of the original complaint defendant Dr. Sands engaged in a series of retaliatory actions, including interfering with his medical treatment, ordering that plaintiff's medication be administered in a way that reduced its effectiveness and caused nausea, and ordering unwarranted medical evaluations. He alleges that defendant CMS's denials of medical treatment and failure to provide therapy, pain management, and adequate auxiliary aids continue to the present.

Plaintiff alleges that as a result of defendants actions he has sustained serious, permanent, and debilitating physical and neurological issues. He alleges he has decreased mobility and a permanently diminished ability to engage in normal activities. He alleges further that he has suffered and will suffer mental and emotional pain, suffering, and anguish. He further alleges that he will require future medical care related to the injuries caused by defendants.

**II. Facts**

The following facts are undisputed for purposes of defendants' motion for summary judgment.[2]

Plaintiff is currently an inmate of MDOC at NECC. Prior to January 2008, plaintiff was incarcerated at FCC. Defendant Lombardi became the Director of MDOC in December 2008. Defendant Griffin is and was at all relevant times the Medical Contract Monitor for MDOC.

MDOC provides an administrative grievance process for prisoners. In 2006 and 2007, the grievance policy stated that "[a]ny offender who wishes to file an informal resolution request, on a grievable issue, should do so within 15 calendar days from the date of the alleged incident." Doc. #106-4, p. 11; Doc. #85-1, p. 9. Effective January 2, 2009, the grievance policy was amended and stated that "[a]ny offender who wishes to file an informal resolution request, on a grievable issue, must do so within 15 calendar days from the date of the alleged incident." Doc. #85-2, p. 8. The 2006, 2007, and 2009 grievance policies further stated that if an inmate is transferred from one institution to another and has a complaint about the institution from which he was transferred, the inmate "may bypass the informal resolution request process and proceed by filing a grievance within fifteen calendar days of the transfer date." Doc. #106-4, p. 17; Doc. #85-1, p. 14; Doc. #85-2, p. 12. If an inmate is dissatisfied with the result of his IRR, he may file an Offender Grievance. The "grievance must be filed within 7 calendar days after the offender receives the response" on his IRR. Doc. #106-4, p. 18; Doc. #85-1, p. 14; Doc. #85-2, p. 13. If an inmate is dissatisfied with the result of his Offender Grievance, he may file an Offender Grievance Appeal, but "must submit the original

---

[2]The facts in this section are drawn from defendants' statement of uncontroverted material facts, Doc. #86, plaintiff's responses thereto, Doc. #106-1, plaintiff's statement of additional facts, Doc. #106-1, and defendants' response thereto, Doc. #109-1. Under local rules, "[a]ll matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." E.D.Mo. L.R. 7-4.01.

Offender Grievance Appeal form to the grievance officer within 7 calendar days." Doc. #106-4, p. 20; Doc. #85-1, p. 17; Doc. #85-2, p. 15. After the inmate receives a response to his Offender Grievance Appeal, the offender is considered to have exhausted the grievance process.

While plaintiff has filed several grievances regarding various issues, including his medical treatment, plaintiff has not filed any grievances specifically complaining of any actions or inactions of defendants Griffin or Lombardi. Plaintiff has identified the following grievances as relevant to this case:

- Grievance FCC-07-734, filed July 23, 2007, in which plaintiff alleged deliberate indifference to serious medical needs relating to inadequate care for his spinal injury. This grievance incorporated a 59-page draft civil complaint referencing plaintiff's medical providers and MDOC officials.

- Grievance FCC-07-1291, filed December 7, 2007, in which plaintiff alleged deliberate indifference to serious medical needs and retaliation for pursuing the grievance process and litigation.

- Grievance NECC-08-978, filed June 10, 2008, in which plaintiff alleged deliberate indifference to serious medical needs and retaliation.

- Grievance NECC-09-823, filed on May 15, 2009, in which plaintiff alleged deliberate indifference to serious medical needs and retaliation.

- Grievance NECC-09-1253, filed on July 28, 2009, in which plaintiff alleged deliberate indifference to serious medical needs and retaliation. Plaintiff also alleged that MDOC employees were tacitly authorizing unconstitutional behavior.

- Grievance NECC-09-1414, filed on August 14, 2009, in which plaintiff alleged that Grievance NECC-09-823 was erroneously marked as resolved by MDOC.

- Grievance NECC-09-1415, filed on August 14, 2009, in which plaintiff alleged retaliation for pursuing litigation.

- Grievance NECC-10-114, filed on January 15, 2010, in which plaintiff alleged deliberate indifference to serious medical needs and retaliation. Plaintiff further alleged that MDOC employees ignored unconstitutional actions.

- Grievance NECC-10-216, filed on March 10, 2010, in which plaintiff alleged retaliation.

## III. Discussion

The basis of plaintiff's § 1983 claims against defendants Lombardi and Griffin is that those defendants "subjected him to cruel and unusual punishment in violation of the Eighth Amendment, made applicable to the States by the Fourteenth." Estelle v. Gamble, 429 U.S. 97, 102 (1977). The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. In Estelle v. Gamble, the Supreme Court described the Eighth Amendment as proscribing "more than physically barbarous punishments" and embodying "'broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . .,' against which we must evaluate penal measures." Id. (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)). The Court said that these principles obligate the government "to provide medical care for those whom it is punishing by incarceration." Id. at 103. The Court noted that failure on the part of prison officials to provide medical care may produce the type of physical torture or lingering death that were "the evils of most immediate concern to the

drafters of the [Eighth] Amendment." Id. The Court also recognized that short of torture or lingering death, less serious deprivations of medical care "may result in pain and suffering which no one suggests would serve any penological purpose." Id. The Court concluded that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." Id. at 104 (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). Thus, "[i]t is well established that '[d]eliberate indifference to a prisoner's serious medical needs is cruel and unusual punishment in violation of the Eighth Amendment.'" Langford v. Norris, 614 F.3d 445, 459 (8th Cir. 2010)(quoting Gordon ex rel. Gordon v. Frank, 454 F.3d 858, 862 (8th Cir. 2006)).

To show deliberate indifference, a prisoner "must prove an objectively serious medical need and that prison officials knew of the need but deliberately disregarded it." Id. at 460. "Prisoners may prove deliberate indifference by showing that the total deprivation of medical care resulted in 'pain and suffering' or 'a lingering death,'" id. (quoting Estelle, 429 U.S. at 103), and "[g]rossly incompetent or inadequate care can [also] constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious course of treatment," id. (quoting Smith v. Jenkins, 919 F.2d 90, 93 (8th Cir. 1990)); see also Williams v. Vincent, 508 F.2d 541, 544 (2d Cir. 1974)(finding that doctor choosing "easier and less efficacious course of treatment" may be attributable to "deliberate indifference . . . rather than professional judgment"); Martinez v. Mancusi, 443 F.2d 921, 924 (2d Cir. 1970)(finding deliberate indifference when prison doctor refused to administer prescribed pain killer and rendered surgery unsuccessful by requiring prisoner to stand despite contrary instruction of surgeon). But "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. "To state

a claim based on 'inadequate medical treatment . . . [t]he plaintiff must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" Langford, 614 F.3d at 460 (quoting Alberson v. Norris, 458 F.3d 762, 765 (8th Cir. 2006)). Prison supervisors cannot be held liable under § 1983 on a theory of respondeat superior, but they can "incur liability . . . for their personal involvement in a constitutional violation, or when their corrective inaction amounts to deliberate indifference to or tacit authorization of the violative practices." Id. (quoting Choate v. Lockhart, 7 F.3d 1370, 1376 (8th Cir. 1993)).

### A. Failure to State a Claim

Defendants Lombardi and Griffin contend that plaintiff fails to state a claim upon which relief can be granted as to his claim of tacit authorization because they were entitled to rely upon the judgment of medical professionals in determining the appropriate medical care for plaintiff. Defendants Lombardi and Griffin cite several cases concerning prison medical care and supervisor liability and state that those cases stand for the proposition that "[a] prison supervisor who has no medical expertise is not deliberately indifferent to a prisoner's serious medical needs when the supervisor provides access to medical professionals who diagnose and treat prisoners' medical complaints; and subsequently defers to prison medical personnel when determining whether a specified course of treatment is medically necessary." Doc. #86, p. 10. As described above, prison officials are under a constitutional duty to furnish necessary medical treatment to prisoners. Langford, 614 F.3d at 460. Defendants Lombardi and Griffin argue, essentially, that they fulfilled this duty by contracting with defendant CMS, providing plaintiff access to healthcare, and by deferring to the medical judgment of defendant CMS's doctors. However, when the duty to furnish

treatment is allegedly unfulfilled as in plaintiff's amended complaint, "the mere contracting of services with an independent contractor does not immunize the State from liability for damages in failing to provide a prisoner with the opportunity for such treatment." Id. (quoting Crooks v. Nix, 872 F.2d 800, 804 (8th Cir. 1989)). The failure of medical contractors to provide adequate or proper pain medication can support a claim of deliberate indifference against prison supervisors. See Crooks, 872 F.2d at 804 (stating in regards to allegations of failure to provide pain medication that "plaintiff's pleadings sufficiently allege inadequate prison policies or medical supervision which, if true, would result in these [prison supervisors] being held liable just as if they had refused to deliver those services themselves").

Plaintiff has alleged that defendant CMS and its defendant doctors wrongfully withheld pain medication for plaintiff's serious pain and knowingly interfered with his recovery from surgery. Plaintiff has further alleged that defendants Lombardi and Griffin were aware of the medical contractors' inadequate care but did nothing about it. The cases cited by defendants Lombardi and Griffin are distinguishable because none of them were decided upon a motion to dismiss, and accordingly, defendants' argument fails to take into account the Rule 12(b)(6) standard in which the Court must assume that all of plaintiff's well-pleaded factual allegations are true. Under Crooks, defendants Lombardi and Griffin's argument that they fulfilled their duty to plaintiff by relying on the judgment of medical professionals does not provide a proper basis for dismissal of plaintiff's tacit authorization claims against them. See id.

Defendants Lombardi and Griffin further argue that plaintiff's tacit authorization claims should be dismissed because his true theory of liability against them is not tacit authorization but rather respondeat superior. They assert that plaintiff's claims against them are derivative in nature

and thus for respondeat superior because the claims depend on the liability of the defendant doctors.

While defendants Lombardi and Griffin correctly state that prison supervisors cannot be held liable under the doctrine of respondeat superior, tacit authorization has been recognized by the Eighth Circuit as a viable theory of liability against prison supervisors.  See Langford, 614 F.3d at 460.  Tacit authorization claims rely on the participation of the prison supervisors in the deliberate indifference by their inaction when notified of the deficient care.  See id.  This participation in the alleged wrong sets tacit authorization claims apart from respondeat superior claims, which impose liability solely on the basis of agency principles and regardless of any participation in the alleged wrong.  See Crooks, 872 F.2d at 803-04.

In this case, plaintiff alleges that defendants Lombardi and Griffin did not take action when notified of the defendant doctors' deliberate indifference.  He does not attempt to hold defendants Lombardi and Griffin liable merely due to an alleged agency relationship with the other defendants.  Accordingly, defendants Lombardi and Griffin's argument that plaintiff's claims are based on respondeat superior, not tacit authorization, fails.

Defendants Lombardi and Griffin next argue that plaintiff fails to state a claim against them for tacit authorization because  the complaint fails to state a claim for Eighth Amendment violations against their co-defendants.  Defendants Lombardi and Griffin argue that they cannot be held liable under § 1983 for tacit authorization of underlying actions that do not violate the Eighth Amendment and that their co-defendants' alleged actions do not constitute Eighth Amendment violations.  They argue that plaintiff's allegations are similar to the prisoner's complaint in Estelle, in which the Supreme Court held that the prison doctors' actions did not violate the Eighth Amendment because the alleged medical deprivations were a matter of debatable medical judgment, not deliberate

indifference.  429 U.S. at 107-08.  The Court in <u>Estelle</u> noted that the prisoner's complaint was "based solely on the lack of diagnosis and inadequate treatment of his back injury."  <u>Id.</u> at 107.

While plaintiff's complaint contains similarities to the prisoner's in <u>Estelle</u>, plaintiff's complaint is not based solely on lack of diagnosis and inadequate treatment.  Instead, plaintiff alleges that defendants wrongfully withheld pain medication and interfered with plaintiff's recovery from surgery.  These allegations are similar to those in <u>Martinez v. Mancusi</u>, 443 F.2d 921 (2d Cir. 1970).  In <u>Martinez</u>, prison officials and doctors allegedly violated specific orders of an outside treating specialist by forcing the plaintiff prisoner to walk on his surgically repaired leg and by depriving him of pain medication.  <u>Id.</u> at 923.  The Second Circuit concluded that those allegations must survive a motion to dismiss because they went beyond a matter of medical judgment and instead suggested a deliberate disregard of the prisoner's health.  <u>Id.</u> at 924-25.  Accepting plaintiff's allegations as true as the Court must, the Court finds that plaintiff has sufficiently alleged a deliberate indifference claim against at least some of the prison medical providers, and accordingly, defendants Lombardi and Griffin's argument for dismissal based on failure to state a claim against the prison doctors will be denied.

Defendants Lombardi and Griffin's fifth argument for dismissal is that they lacked the requisite medical expertise to know that the medical co-defendants were acting with deliberate indifference.  They argue that in order to be able to tacitly authorize deliberate indifference to a serious medical need a supervisor must be able to recognize that the conduct is medically wrong.

Plaintiff's complaint alleges that defendants Lombardi and Griffin were aware of and tacitly authorized the medical co-defendants' alleged deliberate indifference to his serious medical needs.  Defendants Lombardi and Griffin do not cite any law, and this Court has found none, requiring

plaintiff to plead that prison supervisors are medical experts in order to state a tacit authorization claim. Rather, their argument asks the Court to consider matters that are not contained in the complaint, including defendants Lombardi and Griffin's level of medical knowledge and their lack of understanding of plaintiff's medical issues. Defendants Lombardi and Griffin present no evidence to support their assertions regarding their lack of medical knowledge or understanding of plaintiff's medical issues. Thus, even if defendants lack of expertise or understanding would prevent a tacit authorization claim from being asserted against them, this argument fails for lack of evidentiary support.

Defendants Lombardi and Griffin's sixth argument for dismissal is that plaintiff's complaint fails to state a claim inasmuch as it alleges a failure to investigate his complaints because they had no constitutional duty to investigate his complaints. For this argument, they rely on Brown v. Frey, 889 F.2d 159 (8th Cir. 1989), in which the Eighth Circuit held that a prisoner had no clearly identifiable constitutional right to an adequate investigation of a disciplinary violation. Id. at 170. This case is clearly distinguishable because it involves an alleged failure to investigate a disciplinary violation. Plaintiff's claim alleges failure to investigate deliberate indifference to a serious medical need, which has been recognized by the Eighth Circuit as a viable constitutional claim against prison supervisors. See Langford, 614 F.3d at 460 (stating that prison supervisors can incur liability when "their corrective inaction amounts to deliberate indifference to or tacit authorization of the violative practices"). Accordingly, the Court rejects defendants Lombardi and Griffin's sixth argument for dismissal.

**B. Qualified Immunity**

Defendants Lombardi and Griffin next argue that they are entitled to qualified immunity, which "protects state actors from civil liability when their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Kahle v. Leonard, 477 F.3d 544, 549 (8th Cir. 2007)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "Determining whether a state actor is entitled to qualified immunity involves two questions: First, did the official deprive the plaintiff of a constitutional or statutory right? If not, he does not need qualified immunity, as he is not liable under § 1983." Id. at 550. If the official did deprive the plaintiff of a constitutional right, the Court must ask the second question: "Was that right so clearly established at the time that a reasonable official would have understood that his conduct was unlawful under the circumstances? If the right was not clearly established, then the officer is protected by qualified immunity." Id. In order to answer this second question, the Court must "examine the information possessed by the government official accused of wrongdoing" to determine whether a reasonable official with that same information would have known that his actions violated the law. Langford, 614 F.3d at 461. "'This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of preexisting law the unlawfulness must be apparent.'" Id. (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

In this case, defendants Lombardi and Griffin did not cite any evidence outside of the complaint to support their argument for qualified immunity. Thus, this Court assumes that the facts alleged in the complaint are true and will determine whether defendants Lombardi and Griffin are entitled to qualified immunity under those facts.

The Court has previously found that plaintiff's complaint states a claim of a violation of a constitutional right by defendants Lombardi and Griffin, so the Court proceeds to the second question: whether that constitutional right was clearly established at the time of the alleged violation, such that a reasonable official would have known that his actions were unlawful. This Court finds that the Eighth Circuit's decision in <u>Langford</u> is controlling here. In that case, the court found that, as of 2005, a reasonable prison official would have understood that ignoring a prisoner's "complaints about receiving deficient medical care contravened clearly established principles of Eighth Amendment jurisprudence." <u>Langford</u>, 614 F.3d at 462. (citing <u>Miller v. Schoenen</u>, 75 F.3d 1305, 1308 (8th Cir. 1996); <u>Boyd v. Knox</u>, 47 F.3d 966, 968 (8th Cir. 1995); <u>Crooks</u>, 872 F.2d at 804). Accordingly, based on the information available to the Court at this time, defendants Lombardi and Griffin's argument that they are entitled to qualified immunity is denied.

**C. Official Capacity**

Defendants Lombardi and Griffin argue that plaintiff's claims against them in their official capacity should be dismissed because the Eleventh Amendment bars claims under § 1983 for money damages against state officials in their official capacities. Plaintiff denies making any claims against these defendants in their official capacities and insists that his claims are brought against them only in their individual capacities. Indeed, plaintiff's amended complaint does not bring claims against defendants Lombardi and Griffin in their official capacities. Thus, defendants Lombardi and Griffin's argument for dismissal of official-capacity claims will be denied as moot.

**D. Exhaustion of Administrative Remedies**

Defendants Lombardi and Griffin's final argument is that plaintiff failed to exhaust his administrative remedies with respect to his claims against them. "In an effort to address the large

number of prisoner complaints filed in federal court, Congress enacted the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e et seq." Jones v. Bock, 549 U.S. 199, 202 (2007). The PLRA "requires prisoners to exhaust prison grievance procedures before filing suit." Id. (citing 42 U.S.C. § 1997e(a)). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Id. at 211. Failure to exhaust is an affirmative defense, which must be pled and proven by defendants. Id. at 216.

In order to "properly exhaust" pursuant to the PLRA, a prisoner must comply with the prison grievance procedures in place at his prison. Id. at 218. For example, "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances." Id. at 219. Instead, "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, [and] it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Id. at 218. And while the determination of whether the substance of a claim has been exhausted is judged by the standards of the prison's substantive grievance requirements, see id., the prison's procedural grievance rules must also be followed in order to properly exhaust, Woodford v. Ngo, 548 U.S. 81, 90-91 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). In sum, the Court must look to MDOC guidelines to determine whether plaintiff properly exhausted his administrative remedies.

The parties have presented outside evidence concerning defendants' contention that plaintiff failed to exhaust his administrative remedies. Thus, pursuant to Rule 12(d), the Court must treat defendants' motion as a motion for summary judgment with respect to the exhaustion issue.

24

Defendants Lombardi and Griffin argue that plaintiff failed to exhaust his administrative remedies because he did not file any prison grievances against them. With regard to the level of detail required in a grievance, the policies merely state that "[t]he offender should provide whatever material/information is available to her/him." Doc. #106-4, p. 11; Doc. #85-1, p. 9; Doc. #85-2, p. 8. These MDOC grievance procedures do not require a prisoner to specifically name the prison officials against whom his complaint is directed. This conclusion is supported by the Supreme Court's interpretation of the PLRA in Jones v. Bock, 549 U.S. 199 (2007). In Jones, the Court explained that, while the PLRA's exhaustion requirement is meant to provide prison officials with an opportunity to address complaints, courts applying the exhaustion requirement should not confuse grievances with lawsuits. Id. at 219 (citing Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004)). Indeed, a grievance need not meet the notice and pleading standards of a lawsuit, and instead need only meet the requirements of the prison's grievance policy. Id. Because the grievance policies in this case do not require individual notice, plaintiff's failure to specifically name defendants Lombardi and Griffin in his grievances is not fatal to his claim.

Defendants Lombardi and Griffin further argue that plaintiff failed to exhaust his claims against them because his grievances did not contain any allegations akin to the tacit authorization claims alleged against them in this lawsuit. They make this argument despite the fact that plaintiff's grievance filed on July 28, 2009, alleges that MDOC officials were tacitly authorizing unconstitutional behavior. Setting aside this fact that contradicts defendants' argument, nothing in the MDOC grievance policies in this case requires a prisoner to state his grievance in the same or similar terms as a legal claim in a lawsuit. The policies simply require a prisoner to state the information available to him to allow prison officials the opportunity to resolve the prisoner's

complaint. In this case, plaintiff notified prison officials through the grievance process on numerous occasions that he believed the medical care provided to him violated his constitutional rights. In so doing, plaintiff stated the information available to him and complied with the MDOC grievance procedure.

Upon the record presented and having addressed the arguments made by defendants Lombardi and Griffin, the Court finds that they have failed to establish a right to judgment as a matter of law with respect to their exhaustion affirmative defense. Thus, their motion for summary judgment on this issue will be denied.

## IV. Conclusion

Defendants Lombardi and Griffin have failed to establish any valid grounds for dismissal of or summary judgment on plaintiff's amended complaint against them.

**Accordingly**,

**IT IS HEREBY ORDERED** that plaintiff's motion to strike [Doc. #113] is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to file a surreply is granted and said surreply is deemed filed instanter.

**IT IS FURTHER ORDERED** that defendants George Lombardi and Melody Griffin's motion to dismiss, or alternatively, for summary judgment [Doc. #85] is **DENIED**.

Dated this 26th day of January, 2011.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE